IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| KENT BOBO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action Number |
| ) | 02-C-2076-M |
| MID-SOUTH ELECTRONICS, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

The Defendant Mid-South Electronics, Inc. has moved for summary judgment. Based on the undisputed facts, the motion is due to be granted.

**I. The Undisputed Facts**

Born on November 19, 1966, Plaintiff Kenton Bobo is borderline mentally retarded. He can read and write. He received a certificate of completion from Hokes Bluff High School in 1987.

He lives alone. He functions independently and effectively around his home, preparing his own meals and doing the yardwork. He effectively handles all of his personal and business affairs. Plaintiff has never been declared incompetent and has no legal guardian.

Plaintiff was employed by Mid-South Electronics, Inc. ("Mid-South") in 1988. Mid-South is a telecommunication, appliance, and business equipment company. Plaintiff worked primarily on an assembly line which produces cartridges for copy machines. The cartridges are referred to as "bottles."

Plaintiff has never told anyone at Mid-South that he was mentally retarded; and he has not been regarded as retarded by his supervisors and co-workers at Mid-South. He does not project in the workplace the image of a retarded person.

In October 2000, Plaintiff received his first documented warning from Mid-South. At that time, he was verbally warned for his failure to perform his job in an acceptable manner. This warning resulted from Plaintiff's admitted intentional ruination of 600 parts after an angry outburst at work.

Dr. Henry Born has been the Plaintiff's treating physician for 20 years. In addition to mild mental retardation, Dr. Born has diagnosed Plaintiff with chronic anxiety - unrelated to the retardation. Dr. Born relates that Plaintiff has always been very irritable. He notes that Plaintiff has an "explosive" and short temper, tends to "fly off the handle" and is unusually argumentative. Dr. Born attributes these temper problems to Plaintiff's chronic anxiety disorder.

Dr. Born has prescribed tranquilizers for Plaintiff's temper problems; and when Plaintiff takes the medications as prescribed, he functions effectively. However, Plaintiff has a tendency to forego taking his tranquilizers and to adjust his dosages without consultation with his physician.

Plaintiff visited Dr. Born in March 2001, seeking assistance in temper control. Dr. Born found that Plaintiff was becoming more paranoid and angry both at work and at home.

In April 2001, Plaintiff was again reprimanded for disruptive behavior. Plaintiff had admittedly slammed bottles against the assembly line as violently as possible; and he told a co-

worker to "kiss his butt."

On April 13, 2001, Plaintiff returned to Dr. Born in desperation. Dr. Born again noted that Plaintiff was not taking his tranquilizers as prescribed.

A few months later, in July 2001, Plaintiff again became disruptive on the job. Mid-South gave him a final written warning. Plaintiff had hit a co-worker with a toner bottle; his behavior had caused fear among his supervisors and co-workers. Indeed, one of his co-workers had described him as "dangerous."

Plaintiff fully understood that if he became disruptive again on the job, his employment at Mid-South would be terminated. (Kent Dep. at 141, 145.)

After the final written warning, Plaintiff took a medical leave so that his tranquilizers could be adjusted.

After Plaintiff returned from medical leave, his disruptive behavior persisted. He continued to slam bottles on the job. He was given oral warnings on On December 6 and December 10, 2001.

Plaintiff's employment was terminated by Mid-South following the December 10 oral warning.

## II. The Applicable Law

Summary judgment is appropriate when there is no genuine issue as to any material facts and , based upon the undisputed facts, the moving party is entitled to judgment as a matter of law. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). The reviewing court must view the facts in a light most favorable to the non-moving party. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

To qualify as "disabled" under the Americans with Disabilities Act ("ADA"), one must have

a physical or mental impairment that substantially limits one or more major life activities. 42 U.S.C. § 1202(2) (2003). To establish a *prima facie* case of disability discrimination, a Plaintiff must establish not only that he is disabled but also that he is a "qualified individual."*Lowe v. Ala. Power Co.*, 244 F.3d 1305, 1307 (11th Cir. 2001). For ADA purposes, a "qualified individual" is an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. 12111(8) (2003).

A qualified individual with a disability many not be discriminated against because of his disability. However, a disabled person may be discharged if the continued employment of such person poses a "direct threat" to the safety and security of his co-workers and supervisors or the workplace itself. *See* 42 U.S.C. §§ 12113 (a), (b) (2003); 29 C.F.R. § 1630.2(r); *see also Moses v. American Nonwovens, Inc.*, 97 F.3d 446, 447 (11th Cir. 1996).

### III. Analysis and Conclusion

It is not at all certain that the Plaintiff has carried his burden of proof that he is qualified individual with a disability. The Court will pretermit an analysis of this issue, however, because the Defendant's affirmative defense is sufficiently compelling. For purposes of this case, the Court assumes without deciding that Plaintiff has established that he is a qualified individual with a disability.

Even so, the undisputed evidence convincingly shows that Plaintiff's presence in the workplace poses a direct threat to the safety and security of others and the workplace itself. Defendant had provided all reasonable accommodations for Plaintiff's disability prior to the discharge; but for whatever reason, Plaintiff was simply unable to control his temper on the job to

the extent that he no longer presented a direct threat to the safety of his co-workers <u>and</u> the security of Mid-South's business property.

    Defendant has clearly carried the burden of proof on its affirmative defense.

    By separate order, Defendant's Motion for Summary Judgment will be granted.

    Done this 30th day of December, 2003.

                                                 Chief United States District Judge
                                                     U.W. Clemon